# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DOUGLAS DONNACHIE,** | : | Case No. 1:10-CV-0429 |
| Plaintiff | : | |
| v. | : | |
| **FRANK S. FALZONE & ASSOC., PPLC,** *et al.*, | : | Hon. Sylvia H. Rambo |
| Defendants | : | |

## **M E M O R A N D U M**

Before the court is Defendant FFD Resources I, LLC's ("FFD") motion to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 5.) For the reasons that follow, the motion will be granted in part and denied in part..

**I.      Background**

  **A.  Facts**[1]

Plaintiff, Douglas Donnachie, is an adult citizen living in Lebanon, Pennsylvania. Defendant FFD is a Nevada Limited Liability Company which offers "deferred deposit transactions," also known as "payday loans," to consumers over the internet. FFD also does business under the name "Cash Supply," as this is the name Plaintiff uses throughout his complaint, the court will use it as well.

As some point prior to 2008, Plaintiff obtained a payday loan from Cash Supply. Although Plaintiff intended to repay this loan, the interest accrued too

---

[1] The following facts are taken directly from Plaintiff's complaint, and, as is required when deciding a motion to dismiss, are taken as true.

quickly for payments to be feasible. When Plaintiff failed to make payments on his loan, Cash Supply first attempted to collect the loan in-house. When this failed, Cash Supply sent Plaintiff's account to various debt collection agencies. Sometime around October of 2008, Plaintiff was contacted by Accounts Receivable Management of Florida ("ARM"), a company claiming to be collecting on behalf of Cash Supply. The following month, Plaintiff sued ARM for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. Around April of 2009, the parties settled this suit with the agreement that ARM was to pay Plaintiff's debt to Cash Supply in full.

In 2009, Plaintiff contacted the Debt Relief Network ("DRN") to help him repay his outstanding debts. On September 16, 2009, AIS Services, LLC ("AIS") contacted DRN about negotiating a settlement for the debt Plaintiff owed to Cash Supply. At this time, DRN was not aware that Plaintiff had already settled this debt and had been relieved of any legal obligation to Cash Supply. As such, DRN agreed to settle the debt with AIS, and withdrew the funds from Plaintiff's debt settlement escrow account. Around December of 2009, Plaintiff sued ARM again and again ARM was to pay the debt in full to Cash Supply.

On January 11, 2010, an agent who worked for Defendant Frank S. Falzone and Associates, PLLC ("Falzone") contacted Plaintiff's father-in-law and told him Plaintiff had an outstanding debt with Cash Supply. During this phone call, the agent mentioned both "legal prosecution" and "pending legal action" should Plaintiff fail to contact Falzone immediately. That same day, Plaintiff called Falzone and spoke to an individual named Todd Gullo. Plaintiff explained to Mr. Gullo that he no longer owed a debt to Cash Supply, and explained the circumstances

2

surrounding the discharge of that debt and provided the name and number of the attorney who had represented him in that litigation. Plaintiff also explained his disapproval of Falzone contacting his father-in-law and divulging personal information about Plaintiff. Mr. Gullo told Plaintiff he could call anyone listed on the contract and than stated "Now, do you want to know what the hell this is about." Plaintiff has the same number that was listed on the original contract with Cash Supply, however, Falzone chose to contact his father-in-law who is only listed as a reference. Subsequent to this phone call, Falzone never made any attempt to contact Plaintiff's attorney to ask about the discharge of the debt to Cash Supply.

On January 18, 2010, Defendant Falzone called Plaintiff's home phone and again attempted to solicit payment of the loan. Plaintiff again explained that he was represented by an attorney and was upset that he was still being contacted about the alleged debt.

### B. Procedural History

On February 25, 2010, Plaintiff field his complaint alleging that Cash Supply violated the Fair Credit Extension Uniformity Act, 73 Pa. Cons. Stat. § 2270.1 *et seq.* ("FCEUA") and the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. § 201-1 *et seq.* ("UTPCPL"). In addition, Plaintiff brings state common law claims of negligence and false light invasion of privacy.

On June 14, 2010, Cash Supply, filed this motion to dismiss and brief in support. (Docs. 5, 6.) On July 2, 2010, one day past the time allowed by the court's local rules, Plaintiff filed a one-page response to the motion. (Doc. 13.) Assuming

this to be Plaintiff's brief in opposition to the motion, on July 16, 2010, Defendant filed their reply brief. (Doc. 15.)

On July 21, 2010, without any explanation to the court, and clearly well beyond all deadlines, Plaintiff filed a brief in opposition to the motion. (Doc. 16.) On July 17, 2010, the brief in opposition was stricken from the record as it was filed untimely and without any explanation to, or permission from, the court. (Doc. 18.) The motion is ripe for disposition.

**II.        Legal Standard**

When presented with a motion to dismiss for failure to state a claim, the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions," *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009), and ultimately must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, ___U.S.___, 129 S. Ct. 1937, 1950 (2009)).

The complaint must do more than allege the plaintiff's entitlement to relief; it must "show such an entitlement with its facts." *Fowler,* 578 F.3d at 211 (citations omitted). As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a) (alterations in original).) In other words, a claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Bell Atl. Corp. v.*

4

*Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id*.

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted); *see also Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). The court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefit*, 998 F.2d at 1196. Additionally, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (citation omitted); *see also U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) ("Although a district court may not consider matters extraneous to the pleadings, a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.") (internal quotation omitted). However, the court may not rely on other parts of the record in making its decision. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

**III.     Discussion**

Plaintiff's claims against Cash Supply are that they violated the FCEUA, the UTPCPL and committed common law negligence and false light invasion of privacy. Defendant Cash Supply's main rebuttal to all Plaintiff's claims

5

is that they never loaned Plaintiff money and are the wrong company being sued. In addition, Cash Supply argues that Plaintiff's common law claims fail as a matter of law as Plaintiff has insufficiently stated causes of actions.

### A. FCEUA

Count three of Plaintiff's complaint alleges that Cash Supply violated the FCEUA by "engaging in false, misleading or deceptive representations" while attempting to collect on a debt.[2] (Compl. ¶ 57.) Although case law is clear that a creditor cannot be vicariously liable for the action of a debt collector, *see Howe v. Creditors Interchange Receivables Mgmt., LLC, et al.*, 2009 WL 2916935, at *4 (Bkrtcy. E.D. Pa. 2009), in the instant case Plaintiff has brought claims directly against Cash Supply. The complaint sufficiently alleges that Cash Supply furnished "client information" directly to debt collectors, and that this information was "false, misleading or deceptive" as Cash Supply knew, or should have known, that Plaintiff had already been relieved from any financial duty to pay the debts alleged. *See e.g.*, *Gigli v. Palisades Collection, L.L.C.,* 2008 WL 3853295, at *11 (M.D. Pa. 2008) (J. Vanaskie) (finding that a reasonable jury could determine that the creditor provided false or misleading information to the debt collection agency and thus authorized the debt collection action on its own behalf.)

Cash Supply will have an opportunity to rebut the argument that it was not the company that provided Plaintiff with a loan during the course of discovery. However, at this initial stage in the litigation, the complaint has alleged sufficient

---

[2] The complaint lists Cash Supply as a "debt collector," as defined by the statute. 73 Pa. Cons. Stat. § 2270.3; Compl. ¶ 56. However, it is clear from the facts of the case and from Plaintiff's response that Cash Supply is actually a "creditor" as defined by that same statute. 73 Pa. Cons. Stat. § 2270.3. Taking the factual allegations in the complaint as true, the court will assume this to be a typographical error.

facts so that a reasonable jury could conclude that Cash Supply provided false, misleading or deceptive information to debt collectors about an alleged debt owed by Plaintiff in violation of the FCEUA. Therefore, Defendant's motion will be denied with regard to count three of the complaint.

### B. UTPCPL

Count six of Plaintiff's complaint alleges that cash supply violated the UTPCPL, in that Cash Supply engaged in

> unfair acts or practices under the UTPCPL by way of the following . . . :
>     a. Defendant misrepresented to Plaintiff the character, extent or amount of the debt or its status in a legal proceeding, 73 Pa.C.S. § 201-3.1;
>     b. Defendant engaged in deceptive or fraudulent conduct which created a likelihood of confusion or of misunderstanding, 73 Pa.C.S. § 201-2(xxi);

(Compl. ¶ 79 (a)-(b).)

For many of the same reasons Plaintiff's FCEUA claim survives a motion to dismiss, Plaintiff's UTPCPL claim will likewise survive.[3] Plaintiff has properly alleged that Cash Supply provided information to debt collectors about an alleged loan Plaintiff had already settled. In addition, it is alleged that Defendant Falzone indicated that there was "pending legal action" or "legal prosecution," and a reasonable jury could conclude that this information was provided by Cash Supply and was "deceptive or fraudulent conduct which created a likelihood of confusion or of misunderstanding." 73 Pa. Cons. Stat. § 201-2 (xxi). As such, at this stage in the

---

[3] Plaintiff states in his complaint that a violation of the FCEUA is a *per se* violation of the UTPCPL. Some courts have rejected this argument. *See Garczynski v. Countrywide Home Loans, Inc.*, 656 F. Supp. 2d 505, 515 (E.D. Pa. 2009); *Wenglicki v. Tribeca Lending Corp.*, 2009 WL 2195221, at *6 (E.D. Pa. 2009). However, it need not be decided here, as this court finds that Plaintiff has properly stated a UTPCPL claim independent of the FCEUA.

proceedings, Plaintiff has properly alleged Cash Supply violated the UTPCPL, and Defendant's motion will be denied as to count six.[4]

### C. **False Light Invasion of Privacy**

Counts nine and ten of Plaintiff's complaint allege a common law tort of false light invasion of privacy.[5] To establish an invasion of privacy/false light claim a plaintiff must show there was "publicity, given to private facts, which would be highly offensive to a reasonable person and which are not of legitimate concern to the public." *Lennon v. Penn Waste, Inc.*, 2009 WL 3255238, at *1 (M.D. Pa. 2009) (J. Conner) ( citing *Rush v. Phila. Newspapers, Inc.*, 732 A.2d 648, 654 (Pa. Super. Ct. 1999). Furthermore, "[a] cause of action for invasion of privacy will be found where a major misrepresentation of a person's character, history, activities, or beliefs is made that could reasonably be expected to cause a reasonable man to take serious offense." *Gagliardi v. Experian Info. Solutions,. Inc.*, 2009 WL 365647, at *5 (W.D. Pa. 2009) (quoting *Rush*, *supra*.) In addition, there must be widespread dissemination, and communication to only a few will not suffice. *Id.* (finding that Defendants' reporting of Plaintiff's information to three collection agencies was not "widespread dissemination.")

At most, Plaintiff in this case has alleged that one debt collecting agency contacted Plaintiff's father-in-law and told him about the alleged debt. This is not

---

[4] Because the court finds that Plaintiff has properly pled that Cash Supply engaged in false, misleading or deceptive practices, it in turn finds that Plaintiff has properly pled that Cash Supply acted negligently, a lower standard, when it supplied information to debt collectors about an account that had already been settled. Therefore, Plaintiff's count eight claim for negligence will survive and Defendant's motion on this count will be denied.

[5] Plaintiff alleges false light invasion of privacy in both counts nine and ten, the only difference being Defendant Falzone is listed in count ten. The court will assumed this was a typo and only one claim of false light is being brought against Cash Supply.

sufficient to satisfy the "widespread dissemination" element required to support a false light invasion of privacy claim. As such, Defendant's motion on this count will be granted.

### III.        Conclusion

For the reasons listed above, Plaintiff has properly pled, and a reasonable trier of fact could find, that Defendant Cash Supply violated the FCEUA, the UTPCPL and acted negligently and therefore these claims will be allowed to go forward. However, Plaintiff has failed to properly plead a cause of action for false light invasion of privacy and this claim will be dismissed against Cash Supply. An appropriate order will issue.

                                                            s/Sylvia H. Rambo
                                                            United States District Judge

Dated: August 11, 2010.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DOUGLAS DONNACHIE,** | : | Case No. 1:10-CV-0429 |
| Plaintiff | : | |
| v. | : | |
| **FRANK S. FALZONE & ASSOC., PPLC,** *et al.*, | : | Hon. Sylvia H. Rambo |
| Defendants | : | |

# **O R D E R**

For the reasons outlined in the accompanying memorandum of law, **IT IS HEREBY ORDERED THAT** Defendant's motion to dismiss, (Doc. 5), is:

a) **DENIED** with regard to counts three, six and eight of the complaint;

b) **GRANTED** with regard to counts nine and ten as far as they related to Defendant FFD Resources I, Inc. d/b/a Cash Supply.

s/Sylvia H. Rambo
United States District Judge

Dated: August 11, 2010.